**Victor Rosario CARTAGENA,
Plaintiff, Appellant,**

**v.**

**SECRETARY OF the NAVY of the
United States, Defendant, Appellee.**

**No. 79–1501.**

United States Court of Appeals,
First Circuit.

Argued Feb. 6, 1980.

Decided March 6, 1980.

Norman Torres Vidal, San Juan, P. R., on brief for appellant.

Vilma J. Vila Selles, Asst. U. S. Atty., San Juan, P. R., argued, with whom Jose A. Quiles, U. S. Atty., San Juan, P. R., was on brief, for appellee.

Before COFFIN, Chief Judge, WISDOM, Senior Circuit Judge *, CAMPBELL, Circuit Judge.

PER CURIAM:

We affirm the district court's decision and adopt its opinion. *See* Appendix.

APPENDIX

United States District Court

D. Puerto Rico.

Victor Rosario Cartagena,

Plaintiff,

v.

The Secretary of the Navy,

Defendant.

Civ. No. 78–195.

DECISION AND ORDER

TORRUELLA, District Judge.

Plaintiff is a native born Puerto Rican who sought promotion to position of Fire Chief, Naval Security Group Activity, Sabana Seca, Puerto Rico. Plaintiff was not promoted and instead a former Fire Chief, a continental born American, was repromoted to this vacant position. Plaintiff claims the action in not promoting him was discriminatory in nature and grounded solely on the basis of national origin. This action is brought pursuant to Title VII of the Civil Rights Act of 1964 at 42 U.S.C. §§ 2000e–2000e–17, as amended by the Equal Employment Opportunity Act of 1972, Pub.L. No.92–261, 86 Stat. 103. Jurisdiction is founded on 42 U.S.C. § 2000e–5(f)(3) and § 2000e–5. It is now before us on Defendant's Motion for Summary Judgment. Plaintiff's opposition also prays for Summary Judgment in its favor.

Plaintiff's cause of action is predicated on the theory that he was denied appointment to the position of fire chief solely because he is a native born Puerto Rican. The

thrust of his argument, and indeed the basic premise of his cause of action, is that he was in fact the better qualified candidate but that the appointment was conferred on someone else taking into consideration factors other than qualification and ability. The Defendant counters that Plaintiff initially failed to establish his qualifications. Even accepting that Plaintiff was fully qualified, the Defendant contends that applicable federal statutes and regulations mandated that another applicant be accorded priority consideration and it is on this basis that Plaintiff was not appointed. Defendant emphatically denies that its action in not promoting Plaintiff was in any way tainted with a discriminatory animus. Our inquiry turns to whether Plaintiff's allegations or proffered evidence can sustain a Motion for Summary Judgment.

Section 2000e–2(a)(1), 42 U.S.C., provides that it shall be unlawful:

"(1) to fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;"

In similar fashion Section 2000e–16(a) states that:

"(a) All personnel actions affecting employees or applicants for employment . . . in military departments as defined in Section 102 of Title 5, . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." [1]

When faced with a claim of employment discrimination a Court's inquiry into the merits of a claim, i. e., the order and nature of proof required for relief, must necessarily be scrutinized under the guidelines established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under *McDonnell Douglas* a plaintiff bears an initial burden of establishing at the outset a prima

* Of the Fifth Circuit, sitting by designation.

1. Plaintiff's employer, the Department of the Navy is a military department listed under 5 U.S.C. § 102.

facie case of illegal discrimination. To do so he must in general terms first demonstrate:

(1) that he belongs to a protected class (here national origin)

(2) that he applied and was qualified for the promotion for which the vacancy was announced.

(3) that despite these qualifications he was rejected.

(4) that after his rejection the position remained open; or in our particular setting, that a lesser qualified person was hired before him.[2] (*See: McDonnell Douglas*, supra, p. 802, 93 S.Ct., p. 1824.

Once a Plaintiff meets this initial burden the inference is presented that an illegal discrimination has occurred. See: *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). But a prima facie showing is not the end but the beginning of the inquiry. "A prima facie under *McDonnell Douglas* raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Furnco Construction*, supra, at p. 577, 98 S.Ct., at p. 2949.

■ The second step of a *McDonnell Douglas* analysis is activated after a prima facie case has been presented. At this point the burden shifts to the employer and he must then "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at p. 802, 93 S.Ct. at p. 1824. It is vital to note that the burden resting on the employer is not that of proving a total absence of discriminatory motive in not hiring or promoting, see: *Bd. of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216, vacating *Sweeney v. Bd. of Trustees of Keene State College*, 569 F.2d 169 (C.A. 1, 1978), ". . . rather it is a burden of production", *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1011 (1st Cir. 1979). "[U]nder *Furnco* and *McDonnell Douglas* the employer's burden is satisfied if he simply 'explains what he has done' or 'produc[es] evidence of legitimate nondiscriminatory reasons." *Sweeney*, supra, 439 U.S. at 25 n.2, 99 S.Ct. at 296; see also: *Loeb v. Textron, Inc.*, supra, at p. 1011.

■ The third step of the *McDonnell* analysis affords the Plaintiff a "fair opportunity to show that [the employer's] stated reason for [plaintiff's] rejection was in fact pretext." *McDonnell Douglas*, 411 U.S. at p. 804, 93 S.Ct. at 1825. With respect to final adjudication of relief: "The ultimate burden of persuasion on the issue of discrimination remains with the Plaintiff, who must convince the Court by a preponderance of the evidence that he or she has been the victim of discrimination." *Sweeney*, 569 F.2d at 177. See: *Loeb*, supra; *Blizard v. Fielding*, 572 F.2d 13, 15 (C.A. 1, 1978). Against this background of shifting burdens and order of proof we proceed to analyze the pending Motions.

We first examine those material facts not generally in dispute. On February 6, 1976 Vacancy Announcement Number 76–008 was issued on the position of Fire Chief, Naval Security Group Activity, Sabanca Seca. Certain qualification requirements were listed, which included: general experience—1 year, firefighting experience—2½ years, supervising experience—½ year. This position was classified as Fire Chief GS–081–07. Plaintiff, who at the time was a firefighter, believed he met these requirements and applied for the promotion. Three other persons also filed applications

---

2. The wording of the *McDonnell Douglas* test has been slightly altered to better reflect the factual setting before us. *McDonnell* dealt with racial discrimination. The present action deals with alleged discrimination based on national origin. The *McDonnell Douglas* test is not an "inflexible formulation." *Teamsters v. United States*, 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1976). It will necessarily vary according to the factual situation presented. *McDonnell. Douglas*, 411 U.S. p. 802, 93 S.Ct. p. 1824. The *McDonnell Douglas* analysis "is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978).

under this vacancy announcement. Of these applicants three were continental born Americans and one, Plaintiff, was a native born Puerto Rican. Three of the applicants were found disqualified because they did not meet the specialized qualification requirements, to wit, six months of supervisory experience. See Exhibit C, pgs. 7–17. On this vacancy John Q. Massey was selected because of the ineligibility of the other applicants. Thereafter Plaintiff filed a request that John Q. Massey's promotion be revoked because he did not meet the physical requirements for the job and because Plaintiff felt himself to be the superior candidate. No action was taken on this request because immediately thereafter the original announcement was cancelled and a new Vacancy Announcement issued which eliminated the requirement for supervisory experience.[3] On this second vacancy the Personnel Office of the Roosevelt Roads Naval Station certified John Q. Massey's name as a priority referral. The basis for this priority was because John Q. Massey had served as Fire Chief during 1960–1973. In accordance with the Federal Personnel Manual, Subchapter 4–3–c(2) such demotion without personal cause entitled Mr. Massey for special consideration for repromotion. See: Appendix to Answers to Defendant's Interrogatory.[4] Defendant states that Mr. Massey was selected in observance of this directive.

On the basis of the record before us it is difficult to find that Plaintiff has established a prima facie case of illegal discrimination under *McDonnell Douglas.* There is no dispute that Plaintiff is a native born Puerto Rican and as such this is distinguishable from other ethnic nationalities, so as to constitute a definable class. But this is the only requirement that Plaintiff has fully met. The second *McDonnell* requirement compels a Plaintiff to show that he was qualified for the position sought. Plaintiff's first application for the promotion failed to state the requisite supervisory experience.[5] Insomuch as he failed to show he was qualified he has, *a fortiori*, failed to show that he was rejected despite being qualified.

Assuming, *arguendo*, that Plaintiff had in fact presented a prima facie case of discrimination,[6] Defendant's explanations for the rejection and the promotion of John Q. Massey present a sufficient rebuttal under the second step of a *McDonnell Douglas* analysis.

First, John Q. Massey was promoted under a facially neutral seniority system: Subchapter 4–3 c(2) of the Federal Personnel Manual. Title VII exempts such systems from constituting discrimination. Under 42 U.S.C. § 2000e–2(h) "it shall not be an unlawful employment practice for an employer to apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant

3. Defendant, in its Motion for Summary Judgment, explains this cancellation as an attempt by the Navy Agency to widen the area of consideration and include more names in the list of eligibles. The second Announcement was for appointment at a lower level, with promotion to the higher level to come within twelve months upon demonstrating ability to perform at this higher level.

4. Said section reads thus: "(2) *Special consideration for repromotion.* An employee demoted without personal cause is entitled to special consideration for repromotion in the agency in which he was demoted. Although he is not guaranteed repromotion, ordinarily he should be repromoted when a vacancy occurs in a position at his former grade (or any intervening grade) for which he has demonstrated that he is well-qualified, unless there are persuasive reasons for not doing so. Consideration of an employee entitled to special consideration for repromotion must precede efforts to fill the vacancy by other means . . . ."

5. As stated before the Announcement called for six months of supervisory experience. Plaintiff's resume states only that: "In 1961 I was promoted in grade, and in my new position occasionally I assume higher responsibilities including Acting Fire Chief." Defendant's Exhibit C, p. 11.

6. That is accepting his contention that a properly presented resume would have shown him to have the required experience. We further examine Plaintiff's claims in light of the second announcement which required no supervisory experience.

to a bona fide seniority or merit system, . . . provided that such differences are not the result of an intention to discriminate . . ." Nowhere has Plaintiff presented or argued that there is any discriminatory animus in the federal government's policy of according special priority in repromoting those who were initially demoted for such reasons as a reduction in force. This is a neutral seniority objective. Cf. *Watkins v. United Steelworkers of Amer. Local No. 2369,* 516 F.2d 41, 45–49 (C.A. 5, 1975). Defendant Navy was therefore justified in utilizing it in filling vacancies. See gen.: *Teamsters v. United States,* supra.[7]

■ Once the Defendant has justified or explained his actions, a Plaintiff must show that the "reason so articulated or stated is a mere pretext or 'cover up' for what was in truth a discriminatory purpose." *Loeb v. Textron, Inc.,* supra, p. 1012. On a Motion for Summary Judgment this justification would best be placed in issue by an adequate offer of proof that the justification was in fact pretext. In the case at bar Plaintiff makes no mention of a *McDonnell* analysis. There is, however, lengthy argument on the qualifications of the applicant promoted instead of Plaintiff. It is presented that John Q. Massey is a disabled veteran with a 30% disability pension from the Veterans Administration. The record contains a Medical Report dated July 18, 1962, Dr. Luis Pagan, that found John Q. Massey physically disqualified for a fire fighter position.[8] The record further contains an accident report by Dr. Rodriguez Taveras, June 11, 1974, which reveals that Massey suffered a hand fracture which has caused a ten percent disability in its use. Plaintiff's Exhibit 10–A. Lastly, Plaintiff draws the Court's attention to the United States Civil Service Commission Regula-

tions on the physical requirements for fire-fighting personnel. These read thus:

"The duties of these positions require arduous physical exertion under rigorous and unusual conditions. Persons appointed will be subject to extreme physical danger and to irregular and protracted hours of work. Any structural or functional limitation or defect which tends to interfere materially with a high degree of physical activity will disqualify.

"Except where there is clear medical evidence of complete recovery, current receipt of disability retirement compensation from any source, or of a Veterans Administration non-service pension, for any physical condition which is disqualifying in the physical requirement statement will be considered prima facie evidence of failure to meet the physical standards for these positions." Plaintiff's Exhibit 6.

From these factors Plaintiff would purport to show that pursuant to Subchapter 4–3 c(2) of the Federal Personnel Manual Defendant could, and should, have rejected Massey because these were "persuasive reasons for doing so." Plaintiff would attribute a discriminatory animus in not so rejecting Massey.

■ Contrary to Plaintiff's position, and irrespective of the excerpts from the record which Plaintiff highlights, the record does not establish that John Q. Massey was unfit to perform the duties of fire chief.[9] The most recent medical report of record, Dr. Payne, April 12, 1977 found Massey's impairments "not sufficient to interfere with normal performance of duties as fire chief." See: Appendix to Interrogatories, Exhibit A, p. 7. The Report recommended that Massey be accepted as fit for duty. With respect to Dr. Pagan's report on disability

---

**7.** We find that even if a prima facie case existed it has been successfully rebutted under the second step of a *McDonnell* analysis. This does not, however, mean that the first step could have been bypassed. See: *Blizard v. Fielding,* 572 F.2d 13 (C.A. 1, 1978).

**8.** The Report lists John Q. Massey as suffering from Chronic Sinusitis, multiple sclerosis, in-

fantile paralysis in childhood, ulcer. This disability determination was successfully appealed by Massey.

**9.** For reasons discussed above we find that they are not sufficient to raise an issue of fact on disability.

Plaintiff has conveniently overlooked the fact that the Bureau of Retirement and Insurance of the United States Civil Service Commission ruled that Massey was not disabled for his position. This was reaffirmed by a Report dated June 21, 1963. It should further be noted that when Massey did retire it was for having reached the mandatory retirement age and not for any physical disabilities.[10] The conclusions of Dr. Pagan were thus rejected and overruled by the Commission and therefore do not reflect the true meaning of Massey's medical record.[11] We are reminded that the present action is a claim of illegal discrimination not a judicial review of an administrative finding on Massey's disability.[12]

▐ With respect to the other arguments raised by Plaintiff two factors are worth noting. First, insofar as the medical reports of record reveal Massey to be "fit for duty" they rebut any presumption of disability created by the Civil Service Manual. Second, since John Q. Massey was a veteran these requirements are generally waived, see: 5 U.S.C. §§ 3312, 3351, 3363, cf. also: *Massachusetts v. Feeney*, 434 U.S. 884, 98 S.Ct. 252, 54 L.Ed.2d 169 (1979).

We make one last observation. Defendant has presented evidence to show what amounts to a prima facie case of nondiscrimination within this agency. The "Manpower Listing and Analysis of National Origin of All Civilian Employees at Naval Security Group Activity, Sabana Seca," reveals that of 60 civilian employees 56 or over 93% are Puerto Rican, 3 or 5% are Continental born American and 1 is of a different national origin. In *Teamsters v. United States*, supra, the Court stated: ". · . . it is unmistakably clear that '[s]tatistical analyses have served and will continue to serve an important role' in cases in which the existence of discrimination is a disputed issue." *Id.*, 431 U.S. at 339, 97 S.Ct. at 1856 (citations omitted). And while statistics are "not irrefutable", *id.* at 340, 97 S.Ct. at 1856, Plaintiff has presented nothing along these lines which would allow the Court to question their validity, accurateness, or relevance to a claim of discrimination in this agency.

▐ For all the above cited reasons we find that Plaintiff has failed to meet the *McDonnell Douglas* test at two junctures. First, Plaintiff has not proved, nor presented evidence to establish a genuine issue of material fact, to establish that he presented himself as qualified when he first applied for the promotion. At another level, when Defendant set forth a legitimate nondiscriminatory reason for the nonpromotion, Plaintiff failed to adduce sufficient facts that would put in factual issue the question of "pretext or coverup." In reaching the above conclusions we are not unmindful that summary judgment is affordable only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56, Fed.R.Civ.P. See gen.: *Thyssen Plastik*

---

**10.** Massey retired on January 31, 1978. See: Def's Exh. A. Num. 3.

**11.** The extreme weakness of Plaintiff's argument is also manifested by the fact that he purports to show John Q. Massey's disqualification for promotion in 1976 with Medical reports over fourteen years old and after having done so reaches the wrong conclusion with them.

**12.** In reversing Dr. Pagan's findings the Bureau of Retirement and Insurance relied in part on the reports of: Dr. Diaz Cruz, October 13, 1962 which concluded: "Mr. Massey enjoys very good health and has always been able to do ordinary work, including jobs that require considerable physical effort"; Dr. Vicens, Septem-

ber 9, 1962, which stated: ". . . I find no active disease in the system. It is my opinion that he can perform his present duties at full capacity"; Dr. Quilichini, September 7, 1962, which states: "He has enjoyed very good health and has always been able to do ordinary work, including jobs that require considerable physical effort." Also of relevance is the report of Massey's superior officer during this period of time: "Mr. Massey has capably performed these duties and I am anxious to have him continue in this capacity." See: Copy of John Q. Massey's Civil Service Retirement File as filed with the Clerk of the Court pursuant to 5 C.F.R. § 831.106(2)(8).

*Anger KG v. Induplas, Inc.*, 576 F.2d 400 (C.A. 1, 1978); *Hahn v. Sargent*, 523 F.2d 461 (C.A. 1, 1975); *Redman v. Warrener*, 516 F.2d 766 (C.A. 1, 1975). When a Plaintiff has failed to present sufficient evidence "to permit a trier of fact to draw an inference of [racial] discrimination" summary judgment is appropriate. See e. g.: *Mosley v. United States*, 425 F.Supp. 50, 60 (N.D. Cal.1977).

Defendant's Motion for Summary Judgment is Granted. The Clerk of the Court shall enter Judgment accordingly.

It Is So Ordered.

In San Juan, Puerto Rico, this 22nd day of July, 1979.