[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
The plaintiff has filed a four count complaint as a result of her being laid off by the defendant company. In the first count the plaintiff claims she was discharged in violation of Section 31-190a C.G.S.A. which provides that an employer may not discharge an employee because the latter has filed a workers' compensation claim. In the second count the plaintiff claims the defendant company breached its employment contract with her by discharging her. In the third count the plaintiff alleges promissory estoppel — the defendant's promise "induced the plaintiff to accept and continue employment with the defendant company." In the fourth count the plaintiff alleges the negligent infliction of emotional distress.
The plaintiff has moved for summary judgment as to all counts. The plaintiff claims that there is no genuine issue as to any material fact and that the pleadings, affidavits and other proofs submitted show that the plaintiff is entitled to judgment as a matter of law. Lopex v. United Nurseries, Inc., CT Page 6903 Conn. App. 602, 605 (1985), Aetna Casualty Surety Company v. Jones, 220 Conn. 285, 296 (1991).
1. Retaliatory Discharge Claim
As noted the plaintiff claims she was discharged because of her workers' compensation claim. Such a discharge would be in violation of Section 31-290a of our general statutes.
The United States Supreme Court developed the so-called "shifting-burden analysis" in cases where it was claimed that there had been a discriminatory discharge. In Federal summary judgment matters the McDonnell-Douglas tripartite analysis is applied in the following manner: the plaintiff must make out a prima facie case establishing discrimination; if the plaintiff does so the burden shifts to the employer to articulate some legitimate non-discriminatory reason for the employee's discharge; if this is done then the burden shifts back to the employee to show that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation was unworthy of belief — a mere pretext. McDonnel-Douglas Corporation v. Green, 411 U.S. 792 (1973). The Connecticut Supreme Court applied the McDonnell Douglas test first to discrimination cases; Wroblewski v. Lexington Gardens, Inc, 188 Conn. 44, 53 (1982), Chestnut Realty v. CHRO, 201 Conn. 350, 358, 359 (1980). The doctrine was then extended to claims that an employee was discharged for filing a workers' compensation claim; Ford v. Blue Cross v. Blue Shield of Connecticut, Inc., 216 Conn. 40, 53 (1990). This might better be defined as a retaliatory discharge rather than one based on a claim of discrimination. The federal courts in the summary judgment context have also applied the McDonnell-Douglas test to retaliatory discharge cases. Canita v. Yellow Freight System, Inc., 903 F.2d 1064 (6th Cir. 1990). The federal courts have not been reluctant to grant summary judgment motions in employee discharge cases by applying the McDonnell-Douglas test, Canita v. Yellow Freight Systems, Inc., supra; Meri v. Dacon, 759 F.2d 989 (2d Cir. 1985); Wheelwright v. Acurol, 770 F. Sup. 396 (S.D.Ohio 1991); Selsor v. Callaghan Co., 609 F. Sup. 1003 (N.D.Ill 1985); Also, see Cartegna v. Secretary of Navy, 618 F.2d 130, 136
(1st Cir, 1980); Monaco v. Fuddruckers, 789 F. Sup. 944, 952
(ND Ill., 1992), Tanny v. Capital City Press, 742 F. Sup. 347,352 (M.D.La., 1990), Collins v. School District of Kansas,727 F. Sup. 1318, 1324 (1990); Logan v. St. Luke's-Roosevelt CT Page 691 Hospital Center, 636 F. Sup. 226, 234 (N.D.N.Y., 1980).
It can be said that discrimination cases are more amenable to being resolved by summary judgment than claims of retaliatory discharge. In some of the federal cases reviewed by the court the prima facie case made out in a discrimination case is sometimes based on little more than an allegation that the plaintiff is a member of a protected class and he or she was discharged because of membership in that class. Discrimination is often difficult to prove especially as those practicing it become better versed in how to avoid such claims by refraining from overt displays of prejudice. The business reason presented by the employer often involves not direct rebuttal of evidence showing discrimination but evidence showing the employee was not competent to do the job; see, Meri v. Decon, supra, page 998; James v. Capital City Press, supra page 352. Wheelwright v. Acurol, supra, page 400; Selsor v. Callaghan, supra, page 1008. Since the issue then turns on the plaintiff's qualifications, the plaintiffs often lose their cases at the summary judgment level because they cannot chow the business reasons advanced for the discharge were pretextural.
In contrast claimed retaliatory discharge often follows specific provable steps taken by an employee such as union activity or refusing to do something illegal which might aid the employer in avoiding regulation. The very nature of the retaliatory discharge case is that the employer has an interest, sometimes a powerful one, that goes beyond its satisfaction or lack thereof with the particular worker who is discharged or whether that worker's job should be eliminated for "business reasons." The McDonnell-Douglas test should not be rigidly applied in such situations because the question of the employer's motive becomes critical. Did the employer really act because of the neat and concise business reasons that are offered to the court or was it in fact acting because of a larger and different interest reflected in the retaliation claim that has nothing to do with the existence or lack of existence of business reasons to discharge the particular employee. Issues of motive and intent are not conducive to being resolved by motions for summary judgment; Batick v. Seymour, 186 Conn. 632, 646 (1982), cf. Cocheo v. Posi-Seal International, Inc., 208 Conn. 106, 122 (1988). Having said all that it is no doubt true that the McDonnell-Douglas tripartite test applies to summary judgment claims in our state whether the claim is for discriminatory or CT Page 692 retaliatory discharge — retaliatory discharge here based on the filing of a workers' compensation claim.
The court has a great deal of difficulty in understanding the basis of the plaintiff's claim that she has made out a prima facie case of discharge because she filed a workers' compensation claim. Admittedly she filed a workers' compensation claim that was apparently unresolved at the time of her discharge but that claim was first filed some thirteen months prior to her discharge, cf. Miller v. Fairchild Industries, Inc., 797 F.2d 727, 731 (9th Cir. 1986).
She was discharged along with five other employees at the same time and date. There is no claim by the plaintiff that any of these people were laid off because of having filed workers' compensation claims or that she knew that the defendant had engaged in that practice in the past as a means of discouraging such claims. In her deposition the plaintiff said that no one in a management position ever said anything to her that would indicate she was being laid off for filing a compensation claim. When asked directly whether she had any reason to believe she was laid off because of having filed such a claim the plaintiff merely said:
"It could be. It could be like that." (Dep. p. 36).
To rebut this factual state of the record the plaintiff refers to other statements in the deposition by the plaintiff that in her opinion there was other work for her to do when she was laid off — but then what of the other five people laid off with her. The plaintiff's testimony in the deposition is then referred to where she indicates that the compensation claim was not resolved when she was laid off. The court believes this circular argument will not do and summary judgment can be granted on this count for failure to make out a prima facie case.
But assuming such a case has been made out, the claim on this count still cannot prevail against the motion for summary judgment. The defendant submitted affidavits by management which allege the plaintiff was not that good a worker but that the actual reason she was laid off was because a decline in business activity. It was determined several people had to be laid off and a somewhat detailed affidavit has been submitted by the defendant which compared her work skills and experience CT Page 693 to that of workers who were not discharged. The affidavit certainly advances sound business reasons why the plaintiff was discharged instead of the people who were actually retained.
The burden has shifted to the plaintiff under McDonnel-Douglas [McDonnell-Douglas] and all she offers in response is a claim that she was a good worker pointing to an award she received some two and a half years before she was actually discharged and unsubstantiated claims that at the time she was laid off there were jobs she could do. She offers no rebuttal to the affidavit submitted by the defendant's vice president presenting reasons why she was discharged as opposed to more skilled or experienced employees the defendant decided to retain. She offers nothing to rebut the claim by the defendant that company's business was suffering at the time of the discharge. She offers no explanation as to how she can claim that she was singled out for discharge because of a compensation claim when the fact, remains unrefuted that at the time she was discharged so were five other people.
It is true that in tripartite test the following comment must be kept in mind:
 "A satisfactory explanation by the defendant destroys the legally mandated inference of discrimination arising from the plaintiff's initial evidence. Nonetheless, this evidence and inferences properly drawn therefrom may be considered by the trier of fact on the issue of whether the defendant's explanation is pretextural. Indeed there may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation." Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 255 footnote 10 (1981).
But where the prima facie case is of little substance the court cannot use this reasoning to deny a defendant's proper motion for summary judgment. The plaintiff must rely on more than speculation to show that a material fact is in issue between the parties. CT Page 694
The plaintiff also makes repeated reference to the injuries that she allegedly suffered in the course of her employment. She has submitted doctors reports to show that she in fact has physical disability to the upper extremities. But these claims do not meet the issues raised by the motion for summary judgment. She attempts to defeat that claim in part by arguing that the business reasons offered to justify the discharge were pre-textural because the real reason she was discharged was the fact that she could not do her job because of work related disability.
That may provide an independent legal claim against this defendant but such a claim is not made within the four corners of the amended complaint and in effect contradicts her initial allegation that she was discharged because she filed a workers' compensation claim.
2. Contract Claim.
It is no doubt true that if the plaintiff was merely an employee at will the defendant was under no obligation to retain her and that there can be no basis for this contract claim.
An affidavit submitted by Ms. Cohen, vice president and director of defendant's personnel relations indicates that when the plaintiff began employment she signed a document wherein she acknowledged that her employment was to be for no definite period and could be terminated without notice. The plaintiff during her deposition recalled filling out the application, acknowledged that no one told her that her job was for a certain length of time and conceded that Ms. Cohen "never promised that I would be there permanently." See Leniart Deposition at 11, 35, and 42-43.
The plaintiff argues that whether or not she was first hired as an at will employee certain statements made to her by the defendant's vice president modified her initial terms of employment into a so-called implied in fact contractual employment relationship. The plaintiff claims she was emotionally distraught at being transferred to a new department and she was told by the vice president "I promise you I won't lay you off." Leniart deposition at 40-41, 46. CT Page 695
To prevail on this count of the complaint the plaintiff has the burden of proving by a fair preponderance of the evidence that the defendant had agreed either by words or action to undertake some form of actual contract commitment to her under which she could not be terminated without just cause. Coelho v. Posi-Seal International, Inc., 208 Conn. 106,112 (1988); D'Elise-Cupo v. Board of Directors, 202 Conn. 206,212, footnote 2; Therrien v. Safeguard Mfg. Co.,180 Conn. 91, 94-95 (1980). This would then be a contract implied in fact — an implied agreement that the plaintiff could only be laid off for just cause.
It is no doubt true that absent definitive contract language what parties intended to encompass in their contractual commitments is a question of fact. Coelho v. Posi-Seal International, Inc., 208 Conn. at page 113; Lavigne v. Lavigne, 3 Conn. App. 423, 428 (1985).
But in a summary judgment case the question is — is their a material issue of fact between he parties. The long and short of it is that to advance her contention that an implied in fact contract was created here the plaintiff simply offers the language of the defendant's vice president — "I promise you I won't lay you off." It has been the rule in Connecticut that "an agreement for a permanent employment is no more than an indefinite general hiring, terminable at the will of either party without liability to the other;" Fisher v. Jackson,142 Conn. 734, 736 (1955); Sheets v. Teddy's Frosted Foods, Inc.,179 Conn. 471, 474 (1980). The creation of an implied contract not to discharge without just cause no longer requires consideration; Coehlo v. Posi-Seal International, Inc., 208 Conn. at pp. 115 et seq. as long as such an agreement is established by the facts but more facts are needed to raise the claim of such a contract than what the plaintiff has offered. Id., at pp. 109-111.
At one point in her deposition (p. 35) Ms. Leniart testified as follows:
Q. Did anyone at CS Distributors ever tell you that?
A. Nobody promises. Nobody can make promises that they would never lay you off.
This language of the Leinart [Leniart] deposition makes it CT Page 696 clear that the plaintiff had no expectation that she had anything other than an at-will employment contract. Counsel claims these comments were out of context but offers nothing else by way of affidavit or further reference to the Leniart deposition to advance the plaintiff's contractual claim.
3. Promissory Estoppel
This count alleges there should be recovery on the basis of the doctrine of promissory estoppel.
 . . ."under a promissory estoppel theory a party may maintain a claim for damages based upon a promise which induces the party's action or forbearance, if such action or forbearance is undertaken in reasonable reliance upon the promise." Finley v. Aetna Life Casualty Co., 202 Conn. 190, 205 (1987).
The defendant also cites Magnan Anaconda Industries,193 Conn. 558, 564-565 (1984) but this is not strictly a promissory estoppel case but a breach of contract claim which sought to read an implied covenant of good faith and fair dealing into an at-will employment contract.
The basis of the plaintiff's claim is the same language of the defendant vice president discussed earlier. Ms. Leniart in her deposition at 40-41 said he stated "I promise I won't lay you off."
The plaintiff concedes in her brief that during her employment with he defendant she did not receive an offer to work elsewhere. But the plaintiff goes on to argue that the defendant's promise not to lay her off "caused plaintiff to forebear from seeking other employment." As the defendant notes by her own testimony the plaintiff did not forebear from seeking other employment because of any promise by the defendant but because she "liked the job and was successful at the job, how could I go somewhere else." Deposition, Leniart, page 35.
Even more to the point for the court the plaintiff makes important admissions at the deposition which are not contradicted by anything else that has been presented to the court and which bar any promissory estoppel claim. At page 35 CT Page 697 of her deposition the following occurred:
 "Q. Did anyone at CS Distributors ever tell you that you would never be laid off?
 A. Nobody promises. Nobody can promise that they would never lay you off.
 Q. Did anyone at CS Distributors ever tell you that your job was for a certain length of time?
A. No, No."
Later at pages 42-43 the plaintiff said when she was hired she wasn't told she'd be there permanently but thought she would work at the defendant's company because she was an excellent worker, had received recognition as such and was never absent. Significantly she didn't even mention at this point the alleged promise not to lay her off which she referred to at a point only 2 pages before in the deposition.
It is clear that this lady never forbore from seeking employment because she thought she had a commitment not to be laid off. There is no testimony in the deposition or by way of affidavit that indicates she forbore doing anything as a result of the defendant's vice president's language. Again, a motion for summary judgment cannot be resisted by resorting to speculation, not based on factual averments, and contained in a brief.
4. Negligent Infliction of Emotional Distress
The plaintiff has sued on a separate count for negligent infliction of emotional distress.
In resisting the motion for summary judgment the plaintiff cites Ford v. Blue Cross Blue Shield of Connecticut, Inc., 216 Conn. 40 (1990) which stands for the proposition that in an action for retaliatory discharge under Section 31-290a (Workers' Compensation Statute) the employee can make a claim for emotional injury, id. at page 62.
But a claim for negligent infliction of emotional injury against an employer is a separate and distinct claim than one for retaliatory discharge under Section 31-290a; Oakes v. New CT Page 698 England Dairies, Inc., 219 Conn. 1, 9-10 (1991), cf.; Fulco v. Norwich Roman Catholic Diocesan Corporation, 27 Conn. App. 800,807 (1992).
In Montinieri, et al v. SNET Co., 175 Conn. 337, 344-345
(1978) it was held that a defendant could be held liable for unintentionally caused emotional distress if he or she should have realized his or her conduct involved an unreasonable risk of causing such distress and if he or she should have realized further that if he or she did cause such distress, illness or bodily injury might result. However, recovery does not depend on proof either of an ensuing physical injury or of a risk of harm from physical impact.
In Morris v. Hartford Courant Co., 200 Conn. 676, 681
(1986) the court noted that a wrongful discharge action would lie in an employment at will situation but the termination must be based upon an important violation of public policy. The court went on to say "There is nothing in that doctrine, however, to preclude an action for unintentional infliction of emotional distress based upon unreasonable conduct of the defendant (employer) in the termination process." Id. at pp. 681-682.
Assuming for the purposes of discussion, as the plaintiff does, that a claim for negligent infliction of emotional distress can be based on an improper retaliatory discharge as defined by Section 31-290a, this court has ruled that the motion for summary judgment should be granted as to that claim. If the court's reasoning was correct in that ruling, Stoklasa v. Consolidated Rail Corp., 864 F.2d 425, 426 (6th Cir. 1988) is on point. If in fact the defendant was terminated for legitimate business reasons, the defendant can not be held liable for the normal distress and hurt feelings that result when ever anyone is discharged from employment. Although Stoklasa and the defendant talk in terms of foreseeability the real issue is properly limiting the ambit of a doctrine that provides protection to the interest a person has in his or her peace of mind. There must be some underlying wrongdoing which gives rise to a claim under this theory of recovery — see discussion at pages 344-345 of Montunieri v. SNET Co., 175 Conn. 337 (1978). Morris v. Hartford Courant Co., supra talks about "unreasonable conduct of the defendant on the termination process." 200 Conn. at page 682. Here the defendant was called into the office of an CT Page 699 officer of the defendant company and informed along with five others that she was being laid off. There is no claim that the meeting or any other aspect of the actual discharge was done in an inconsiderate humiliating, or embarrassing manner. The mere fact of termination under these circumstances does not give rise to a claim for unintentional infliction of emotional distress. To hold otherwise would completely alter the nature of employment at will contracts and in effect imply that individual employers and companies are liable for the emotional distress they inflict on others when they are merely engaging in business conduct which society is not willing to consider improper or unacceptable.
The motion for summary judgment is granted as to all four counts.
Corradino, J.