# United States Court of Appeals
## For the First Circuit

No. 12-1978

NEYSA COLÓN,

Plaintiff, Appellant,

v.

JEFFREY A. TRACEY; INFOTECH AEROSPACE SERVICE, INC.;
IVEETZIA AVILÉZ; LUIS MERCADO,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Lipez, Circuit Judges.

Johanna M. Emmanuelli Huertas, with whom Pedro E. Ortiz Álvarez, LLC, was on brief, for appellant.
Mariel Y. Haack, with whom Edwin J. Seda-Fernández and Adsuar Muñiz Goyco Seda & Pérez-Ochoa, PSC, were on brief, for appellees.

May 17, 2013

**LYNCH, Chief Judge**. Plaintiff Neysa Colón appeals from the entry of summary judgment on her claims against Infotech Aerospace Services, Inc., for unlawful employment retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq. Colón v. Infotech Aerospace Servs. Inc., 869 F. Supp. 2d 220 (D.P.R. 2012). The district court dismissed Colón's case with prejudice on the grounds that, as to the two aspects of her employment at issue, she had neither established a prima facie case of retaliation nor shown that the defendants' stated rationales for their purportedly unlawful actions toward her were pretextual. Id. at 230. Finding no error in the district court's conclusions, we affirm.

I.

Defendant Infotech Aerospace Services, Inc. ("IAS") is a Puerto Rico corporation specializing in the design and supply of aerospace products for military, commercial, and industrial application. From April 30, 2007, through her resignation on March 8, 2010, Colón was employed at IAS as a Human Resources ("HR") Generalist, and she was primarily responsible in that capacity for overseeing the benefits and compensation of IAS employees. Throughout Colón's term of employment, defendant Luis Mercado served as IAS's HR Manager, while defendants Iveetzia Aviléz and Jeffrey Tracey occupied other supervisory roles within the company.

Colón filed this action against the defendants in the District of Puerto Rico on December 13, 2010. The complaint

-2-

alleges that beginning in approximately December 2008, Colón was subject to several adverse employment actions, including a January 2009 "demotion" and a June 2009 suspension, which compelled her to resign from IAS. Colón asserts that these actions were taken in retaliation for two occasions on which, in the ordinary performance of her duties, she called attention to IAS's purportedly discriminatory employment practices.[1]

Defendants filed their motion for summary judgment on April 2, 2012, asserting that the uncontested facts established that Colón had been treated fairly and without retaliation throughout her employment with IAS, that IAS's actions toward Colón were taken for bona fide business reasons, and that Colón's resignation resulted from her own "overreact[ion] to a well-warranted disciplinary situation." The defendants argued that Colón's claims should be dismissed with prejudice because she could not establish her prima facie case nor show that IAS's stated reasons for its actions toward her were pretextual.

---

[1] The complaint also asserted claims under the federal Equal Pay Act ("EPA"), 29 U.S.C. § 206(d)(1), and Puerto Rico Laws 100 and 115, P.R. Laws Ann. tit. 29, §§ 146, 194, and asserted that defendants Mercado, Tracey, and Aviléz were personally liable, pursuant to Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141, "for their 'conspiracy and engagement in discriminatory acts' in concert with IAS." Colón v. Infotech Aerospace Servs. Inc., 869 F. Supp. 2d 220, 222 (D.P.R. 2012). Colón has not challenged the district court's January 10, 2012 dismissal of her Law 100 claims or addressed her EPA, Law 115, or Article 1802 claims in her argument on appeal.

On May 21, 2012, the magistrate judge issued a Report and Recommendation ("R & R") advising the district court to grant the defendants' motion for summary judgment in full. Colón v. Infotech Aerospace Servs., Inc., Civil No. 10-2220 (FAB/CVR), 2012 WL 3155140 (D.P.R. May 21, 2012). The district court ultimately adopted the magistrate judge's R & R, dismissing Colón's case with prejudice. Colón, 869 F. Supp. 2d at 231. This timely appeal followed.

## II.

We set out the undisputed facts articulated in the R & R and in the district court opinion as to the two allegedly adverse employment actions that Colón has emphasized on appeal as the bases for her retaliation claims: (1) the January 2009 change in her position, which she asserts was a demotion; and (2) the June 2009 suspension.[2]

A.  The January 2009 Change in Position

1.  Colón's Inadequate Preparation of IAS's 2008 Affirmative Action Plan

In 2007, shortly after she was hired, Colón was asked to prepare IAS's 2008 Affirmative Action Plan ("AAP"), having

---

[2] Colón objected below to the R & R's treatment of the adverse employment actions alleged in the complaint as discrete incidents rather than as subcomponents in an overarching "reprisal course of action." The district court rejected this argument, finding that "[b]ecause each of these actions were [sic] not adverse individually, viewing them combined makes no significant legal difference." Colón, 869 F. Supp. 2d at 230. Colón has not raised this issue on appeal and we do not address it.

represented to the company that she had experience preparing AAPs through her previous employer. Colón's timely completion of this assignment was important because IAS could not receive contracts with the federal government without an AAP. See, e.g., Exec. Order No. 11,246, 30 Fed. Reg. 12,319 (Sept. 24, 1965) (authorizing Secretary of Labor to require submission of AAPs by all government contractors); see also 41 C.F.R. pts. 60-1, -2 (2013) (implementing regulations).

Around January 2009, more than a year later, Colón submitted a late copy of the 2008 AAP to her supervisor, Luis Mercado, who found it to be "six months late," "incomplete," and "a draft." Mercado informed Colón that her work "wasn't acceptable." He, not being an expert in the area, recommended that IAS hire an outside consultant to independently evaluate Colón's progress and "complete the whole process." IAS retained Janice Monge, a certified expert in affirmative action, to that end on February 23, 2009. Colón was removed from the assignment.

Monge completed her review of Colón's draft AAP in July 2009, finding a host of errors and deficiencies.[3] Of some

---

[3] As summarized by the magistrate judge, Monge concluded, inter alia, that Colón's AAP (1) was "six . . . months late, covering [only] until June 30, 2008"; (2) "contained entire sections no longer required by law"; (3) "lacked an adverse impact analysis, compensation analysis, [and] was not supported by statistical analysis"; and (4) "lacked foundation for the conclusions [it] expressed." Colón v. Infotech Aerospace Servs., Inc., Civil No. 10-2220 (FAB/CVR), 2012 WL 3155140, at *4 (D.P.R. May 21, 2012).

importance here, while Colón's version of the AAP purported to find compensation discrimination at IAS, it "did not indicate what methodology was used, what information the conclusion was based on and how Colón had reached that conclusion." Colón, 2012 WL 3155140, at *4. Following this evaluation, Monge completed a corrected AAP for IAS in 2009. IAS has since retained Monge to prepare its annual AAP. Id.

2. Colón's Participation in Human Resources Cross-Training

In December 2008, Mercado expressed to Jeff Tracey his intention to "cross-train" four HR employees, including Colón, in other areas within the HR Department.[4] The purpose of this exercise was to create a more flexible work force and "to ensure that all functions of the Human Resources Department could be performed, even in the absence of the employee who usually performed [them]." Colón was informed of her participation in January 2009 and was subsequently assigned to new "Business Partner" responsibilities, which made her an HR "point person of contact" for employees within various IAS departments. Another HR employee, Hermy Rosario, assumed Colón's previous "Compensation" responsibilities.

---

[4] In full, the January 2009 cross-training rotations were as follows: "Ms. Hermy Rosario rotated from Business Partner to Compensation, Ms. Neysa Colón rotated from Compensation to Business Partner, Ms. Margarita Piñero was rotated from Hiring to Training, and Ms. Mayra García was rotated from Training to Hiring."

The complaint alleges that Colón's new position was a demotion. However, Colón's job title, salary, and benefits remained the same, and her performance review for 2008, discussed in early 2009, was favorable. Moreover, Colón had participated in a similar cross-training exercise in January 2008, which had also assigned to her some "Business Partner" responsibilities. Colón, 869 F. Supp. 2d at 223.

B.    The June 2009 Suspension

1.    Colón's Investigation of Díaz's Salary Discrimination Complaint

In March 2009, the HR Department received a complaint from Anayanssi Díaz, an employee in IAS's Project Management Department, regarding an alleged disparity between her compensation and that of a male coworker. As the Business Partner assigned to Project Management, Colón was asked to prepare a table comparing Díaz and the male employee as to salary, experience, education, and other factors relevant to compensation. Mercado testified that both he and IAS's then-general manager, Hector Rodríguez, explicitly instructed Colón that all information pertaining to this investigation was confidential and could not be disclosed except as authorized by Mercado.[5] Colón would later violate this instruction, as recounted below.

_____

[5] Colón later requested that she be removed from the investigation, as Díaz was a close friend.

A few months later, in May 2009, Díaz had a panic attack in an IAS restroom and was discovered there by Colón and another IAS employee. IAS referred Díaz to the Puerto Rico State Insurance Fund Corporation[6] ("SIF") for evaluation and, on June 9, 2009, an SIF investigator, Agrimalde Pérez, came to IAS to interview Colón and other witnesses to the panic attack incident. Because IAS is a secured facility, Pérez had to be escorted by an authorized IAS employee at all times.[7] Hermy Rosario, the employee who had assumed Colón's "Compensation" duties during cross-training, was assigned that task and remained with or near Pérez for the duration of his visit.[8]

---

[6] The Puerto Rico State Insurance Fund Corporation is "a public corporation in Puerto Rico that administers the Commonwealth's workers' compensation program." Casiano-Montañez v. State Ins. Fund Corp., 707 F.3d 124, 126 (1st Cir. 2013); see also P.R. Laws Ann. tit. 11, §§ 1a to 1b-4 (authorizing creation of SIF and defining its authority and obligations).

[7] Not all IAS employees were authorized to act as visitor escorts. Such authorization required an employee to "complete[] certain authorization documents and sign a certification stating the understanding of ensuring all visitors are never left unattended, the potential consequences these situations have for the company and the possible disciplinary action as to the employee if the visitor is left unattended." Colón, 2012 WL 3155140, at *5.

[8] Colón alleges without evidentiary support that Rosario stood near the door throughout her interview, "making gestures that [Colón] was talking too much," and that Colón told Pérez "that she felt intimidated" by Rosario's presence. Contrary to these assertions, however, Pérez testified that Rosario was not present during Colón's interview and that Colón made no such comments and appeared "normal" during the interview process. Pérez did acknowledge that Rosario was present for some of his interviews, but stated that she did not "participate or intervene" in any manner.

2. Colón's Disclosure of Confidential Information to the Puerto Rico State Insurance Fund and Other Violations of IAS Rules

On June 12, 2009, Rosario found a fax transaction report indicating that an IAS employee had sent confidential salary information to the SIF concerning IAS's internal investigation of Díaz's salary discrimination complaint. When Mercado later met with Colón, she admitted to faxing the information even though it was confidential and she had not requested prior approval from Mercado as instructed. This conduct violated several provisions in the IAS employee manual.[9]

Colón argued, however, that Pérez had specifically requested her salary comparison analysis and that she believed disclosure was therefore required by law. Mercado decided to contact the SIF directly before taking disciplinary action and adjourned the meeting. Both the SIF and Pérez denied requesting the confidential salary information. In fact, Pérez testified that Colón had independently offered to provide the information and that he had instructed Colón, "if she could provide it, she could send it by fax." R. App. 427 (emphasis added).

On June 16, 2009, Tracey and Aviléz held a follow-up meeting with Colón, during which Colón also admitted to having

---

[9] The IAS employee manual provides, inter alia, that employee wage information is strictly confidential and can only be disclosed pursuant to a written request from the employee or in the context of a legal proceeding, and that improper disclosure is sanctionable by corrective disciplinary action.

confidential salary information on her "pen drive" and her personal "H: drive" on IAS's server, both violations of IAS policy. This was a separate transgression of company rules. Colón was asked to transfer that proprietary information to a password protected folder on the company's "O: drive." She was then informed that she was being placed on three days of paid administrative leave while IAS investigated the matter further.[10] It is this leave which she alleges was retaliatory. Tracey and Aviléz also told Colón that they wished to keep the investigation of her conduct confidential for her privacy and benefit.[11]

At the close of its investigation, IAS determined that Colón's conduct had, in fact, violated company policy. Upon her return to work, Colón was to receive a "final corrective action," or a written warning informing her that future disciplinary infractions might result in termination of her employment. No additional disciplinary action was contemplated at that time.

---

[10] The IAS employee manual expressly permitted suspension with pay during the pendency of an investigation, and IAS did not regard such action as disciplinary.

[11] Specifically, the magistrate judge ruled that the undisputed facts established that "[IAS] determined to keep Colón's investigation confidential for she was part of Human Resources and [they] did not want her to feel uncomfortable in her work area. Aviles and Tracy made a commitment with Colón [that] the matter was to be kept as confidential as possible." Colón, 2012 WL 3155140, at *7.

3.  Colón's Failure to Return to Work and Subsequent Resignation

On the morning of June 19, 2009, the Friday before the Monday on which Colón was scheduled to return to work, Aviléz left Colón a voice message instructing her to contact Tracey in order to retrieve her employee badge, which had been taken away during her suspension and was required to enter IAS's secure facility. Otherwise, Colón would have to pick up her badge in IAS's non-secure lobby, jeopardizing the confidentiality of her disciplinary investigation.

Colón never contacted Tracey and did not report to work on June 22. Instead, Colón reported to the SIF, claiming that due to Aviléz's voice message, she was emotionally distressed and feared Tracey might attack or even kill her if they met outside IAS's facilities.[12] During the pendency of the SIF's investigation, IAS reserved Colón's employment, as required by Puerto Rico law, and kept her position open and available should she decide to return.

On February 8, 2010, the SIF closed Colón's case, finding that her emotional condition was not related to her employment. From that date, Colón had fifteen days to request reinstatement before being subject to termination. She did not request

---

[12] The magistrate judge listened to the voicemail and concluded that it was non-threatening and professional in both tone and content. Colón, 2012 WL 3155140, at *14; see Colón, 869 F. Supp. 2d at 227.

-11-

reinstatement.  Rather, IAS held Colón's position open until March 8, 2010, approximately one month later, when she resigned.

## III.

We review the district court's grant of summary judgment de novo, construing the evidence in the light most favorable to the non-movant and drawing all reasonable inferences in her favor. Roman v. Potter, 604 F.3d 34, 38 (1st Cir. 2010); Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006).  Summary judgment is appropriate under this rubric when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  We may affirm summary judgment on any basis apparent in the record.  Chiang v. Verizon New Eng. Inc., 595 F.3d 26, 34 (1st Cir. 2010).

## IV.

Colón's appellate brief raises a host of poorly differentiated challenges[13] to the district court's conclusion that, on the undisputed evidence, neither her purported "demotion" in January 2009 nor her suspension in June 2009 constituted unlawful employment retaliation.  We evaluate these challenges under the familiar three-step burden shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See

---

[13]  Both the magistrate and district court judges found that Colón had violated Puerto Rico's anti-ferreting rule.  Colón, 869 F. Supp. 2d at 227-28; Colón, 2012 WL 3155140, at *11.  There are similar difficulties in the briefing of her argument on appeal.

Valentín-Almeyda v. Municipality of Aguadilla, 447 F.3d 85, 94 (1st Cir. 2006); McMillan v. Mass. Soc'y for Prevention of Cruelty to Animals, 140 F.3d 288, 309 (1st Cir. 1998).

Under the McDonnell Douglas framework, a plaintiff must first establish a prima facie case of retaliation by showing that (1) she engaged in protected conduct, (2) she was subject to an adverse employment action, and (3) a causal connection existed between the first and second elements. Noviello v. City of Boston, 398 F.3d 76, 88 (1st Cir. 2005). The burden then shifts to the defendant to "articulate a legitimate, non-discriminatory reason for its challenged actions." Provencher v. CVS Pharmacy, Div. of Melville Corp., 145 F.3d 5, 10 (1st Cir. 1998) (citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254-55 (1981)). Finally, "[i]f the defendant does so, the ultimate burden falls on the plaintiff to show that the proffered legitimate reason is in fact a pretext and that the job action was the result of the defendant's retaliatory animus." Fennell v. First Step Designs, Ltd., 83 F.3d 526, 535 (1st Cir. 1996).[14]

A. The January 2009 "Demotion"

The magistrate judge and district court found on the undisputed evidence that Colón's January 2009 participation in

---

[14] As the appropriate standard for causation in a Title VII employment retaliation claim is not at issue here, we acknowledge but need not address the Supreme Court's recent grant of certiorari in University of Texas Southwestern Medical Center v. Nassar, 133 S. Ct. 978 (2013).

cross-training, and concurrent removal from AAP responsibilities, did not support an employment retaliation claim. Two independent grounds supported that conclusion:

> (1) Colón's reassignment to Business Partner responsibilities did not amount to a materially adverse employment action, as required to establish her prima facie case, Colón, 2012 WL 3155140, at *14; and

> (2) Colón failed to show that the defendants' explanations for her reassignment to Business Partner responsibilities were pretextual at the third stage of McDonnell Douglas, id. at *13.

By failing to address the first ground for summary judgment in her brief, Colón has waived any challenge she may have had, see Fennell, 83 F.3d at 537, and we could affirm the district court on that basis alone. Moreover, on the merits of the issue, the district court rightly concluded that the record did not support Colón's characterization of her reassignment to Business Partner responsibilities as materially adverse. Colón, 869 F. Supp. 2d at 230.

Title VII's antiretaliation provision does not "immunize . . . employee[s] from those petty slights or minor annoyances that often take place at work and that all employees experience," Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006); rather, it seeks "to prevent employer interference with 'unfettered access' to Title VII's remedial mechanisms," id. (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 346 (1997)). Thus, to qualify as materially adverse, an employer's challenged action "must be one

that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" Dixon v. Int'l Bhd. of Police Officers, 504 F.3d 73, 81 (1st Cir. 2007) (quoting Burlington, 548 U.S. at 57). Where, as here, the action in question is a temporary change in job responsibilities, has no effect on an employee's salary or job title, and is applied to similarly situated employees without complaint, a plaintiff faces an uphill battle in establishing that it was materially adverse. See, e.g., Ahern v. Shinseki, 629 F.3d 49, 56 (1st Cir. 2010); Morales-Vallellanes v. Potter, 605 F.3d 27, 37-39 (1st Cir. 2010).

As to the second ground for summary judgment, we briefly describe and reject Colón's two challenges to the district court's analysis on the issue of pretext. First, Colón objects to the district court's earlier conclusion at the second stage in McDonnell Douglas that IAS furnished a legitimate business rationale for reassigning her AAP and Compensation responsibilities to others. Colón argues that because Monge did not complete her review of the 2008 AAP until July 2009, the deficiencies[15] she allegedly found therein could not justify IAS's decision six months earlier, in January 2009, to assign Colón to exclusively Business

_____

[15] Because we conclude that the defendants' stated interest in creating a more flexible HR Department provides an independently legitimate basis for Colón's reassignment, we need not address her challenges to certain of the conclusions drawn in Monge's July 2009 review.

Partner responsibilities.[16] But that argument does not go to the defendants' independent rationale for her reassignment, namely, that Mercado wanted to create a more flexible HR staff by way of the January 2009 cross-training program. And we agree with the district court that this rationale provides an independent and legitimate basis for the defendants' actions. Colón, 869 F. Supp. 2d at 229.

Colón's next objection is that, even if the defendants furnished a legitimate business rationale for her participation in cross-training, the temporal proximity between that decision and her submission of the 2008 AAP created a triable issue of fact as to whether the defendants' true intentions were retaliatory. Not so.

As an initial matter, the record does not establish that Mercado had even seen the flawed 2008 AAP Colón prepared before deciding that she would participate in cross-training. Additionally, even if Mercado had reviewed Colón's submission prior to including her among the cross-training participants, "[t]he mere proximity of these acts . . . without any indication of discrimination or retaliation does not serve to establish pretext by defendants." Colón, 2012 WL 3155140, at *9. In fact, the defendants had previously cross-trained Colón in January 2008 and,

---

[16] Of course, this objection ignores that the very reason IAS sought Monge's assistance in the first place was that Mercado had found in January 2009 that Colón's AAP was deficient.

-16-

in doing so again in January 2009, assigned three other employees to participate in the program with her. Conversely, Colón has not produced any evidence to discredit the legitimacy of the defendants' stated interest in conducting cross-training or to show, as required, that the defendants' true motivation was retaliatory animus. See Mesnick v. Gen. Elec. Co., 950 F.2d 816, 829 (1st Cir. 1991).

B.   The June 2009 Suspension

The magistrate judge and district court also concluded that Colón's June 2009 suspension did not give rise to an actionable employment retaliation claim. In so concluding, both judges found that regardless of whether Pérez had or had not requested that Colón submit the confidential salary information, the defendants had provided two uncontested bases which justified her suspension:

> (1) Colón had not sought prior approval from Mercado, as instructed, before faxing the confidential salary information to the SIF, Colón, 869 F. Supp. 2d at 223 n.4; and

> (2) Colón had kept proprietary salary information on her personal "pen drive" and non-password-protected "H: drive" in violation of IAS policy, id. at 224.

The district court found at the first stage of McDonnell Douglas that neither of these activities constituted protected conduct, id. at 229-30, and, at the third stage, that Colón could not demonstrate that a suspension predicated on either basis was pretextual, id.

-17-

Whether or not she viewed the information as requested by the SIF, Colón chose to disclose confidential salary information not only about Díaz, but also about the unnamed male employee, as we have described. This was a direct violation of a legitimate IAS policy and of her supervisor's clear instruction that she request authorization from him prior to making any disclosures. Nothing in Title VII requires that such policies and instructions, reasonable on their face, be held invalid. And Colón offers not one iota of evidence that the prior authorization requirement was instituted in order to hide the information requested. The record instead shows that IAS did cooperate with the SIF's investigation.

Further, Colón does not deny "that she had confidential information on her personal drives," which is not permitted under IAS policy. Colón, 869 F. Supp. at 229. Additionally, Colón has offered no justification of any sort for keeping the proprietary information on her non-password-protected "H: drive," and that concession is also fatal to her claims predicated on the June 2009 suspension.

V.

Because no reasonable fact-finder could resolve these issues in Colón's favor, see Cortés-Irizarry v. Corporación Insular de Seguros, 111 F.3d 184, 187 (1st Cir. 1997), the district court's entry of summary judgment is affirmed.

So ordered.

-18-