# United States Court of Appeals
## For the First Circuit

No. 16-1387

GREGORY P. TURNER,

Plaintiff, Appellant,

v.

HUBBARD SYSTEMS, INC., f/k/a Jim Hubbard and Associates, Inc.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Torruella, Thompson, Kayatta,
Circuit Judges.

Gregory P. Turner on brief for appellant.
Bethany P. Minich, Daniella Massimilla, and Litchfield Cavo
LLP on brief for appellee.

April 19, 2017

**THOMPSON**, **Circuit Judge**. The relevant facts in this case are few. Appellant Gregory Turner is a sole practitioner whose Massachusetts law practice is focused on recovering delinquent accounts. Appellee Hubbard Systems, Inc. ("HSI") is a Delaware software corporation that develops, markets, and sells a debt collection software program titled "Collection Partner." In December 1992, Turner entered into a rent-to-own agreement with HSI in which he was granted a temporary rental license for the use of Collection Partner. After making some initial payments and a deposit, Turner was to make monthly payments until he paid off the remaining balance for the software, at which time he would be given a permanent license. Turner made the final installment payment sometime in 1996, and the parties agree that thereafter Turner owned a permanent license to the software.

HSI also provides monthly software maintenance services. Turner's rent-to-own agreement made clear that maintenance service fees would be charged every month and that such fees were "separate and apart from the monthly software license fee rental payment[s]" that Turner was required to make in order to gain a permanent license to the software.

In late April 2011, HSI sent Turner a new license key to reflect an update in the software. That license expired on May 31, 2011. On June 1, 2011 Turner informed HSI that his Collection

- 2 -

Partner software was not working.[1]  Before noon that same day, HSI sent Turner a new license key that permitted him access to the software.  Turner's license and access to the Collection Partner software has remained uninterrupted since the new license key was sent on June 1, 2011.

The following year, Turner filed suit alleging that HSI violated the Computer Fraud and Abuse Act ("CFAA" or "the Act") when it issued a license key that expired on May 31, 2011, despite the fact that he owned a permanent license to the Collection Partner software.  Turner also alleged state law claims of conversion, intentional (or negligent) infliction of emotional distress, and unfair and deceptive practices in violation of Massachusetts General Laws Chapter 93A.  The district court accepted and adopted the magistrate judge's report and recommendation, granted HSI's motion for summary judgment, and denied Turner's motion to strike portions of HSI's motion as "beyond the scope of the pleadings."  In addition to objecting to the magistrate judge's report, Turner also filed motions to supplement the record, certify legal questions to the

---

[1] Turner argues that HSI sent him the April license key set to expire at the end of May 2011 in an attempt to collect on his late maintenance fees.  HSI argues that the failure to update Turner's license key was "[d]ue to administrative oversight or error" and that it "never intended for the license key that was sent to [Turner] to expire."  These arguments are of no consequence to our analysis in this case.

Massachusetts Supreme Judicial Court, and appeal one of the magistrate judge's management orders before the district court judge. The district court judge denied all these additional motions in their entirety.

Turner appeals the district court's order adopting the magistrate judge's report and recommendation, denying Turner's motion to strike, and granting HSI's motion for summary judgment.[2]

## Discussion

"We review a district court's grant of summary judgment de novo," viewing the facts in the light most favorable to the nonmovant. Burke v. Town of Walpole, 405 F.3d 66, 75 (1st Cir. 2005) (citing Valente v. Wallace, 332 F.3d 30, 32 (1st Cir. 2003)). "We review the denial of [a motion to strike a motion for summary judgment] for abuse of discretion." FDIC v. Kooyomjian, 220 F.3d 10, 16 (1st Cir. 2000); see also Dodi v. Putnam Cos., No. 95-2266, 1996 WL 489998, at *2 (1st Cir. Aug. 28, 1996) ("We review the district court's decision to strike for abuse of discretion.").

A brief review of the relevant statutory framework may prove helpful here. Congress enacted the CFAA in 1984 to address the problems of computer crime and hacking. Pub. L. No. 98-473,

---

[2] Although Turner also appeals the district court's refusal to consider evidence that was not part of the summary judgment record, the lack of developed argumentation in his brief renders this basis for appeal waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

- 4 -

98 Stat. 2190; see also WEC Carolina Energy Sols. LLC v. Miller, 687 F.3d 199, 201 (4th Cir. 2012). Originally a criminal statute, in 1986 the Act was expanded to include a civil action component as well. Pub. L. No. 99-474, 100 Stat. 1213 (codified as amended at 18 U.S.C. § 1030); Miller, 687 F.3d at 201. Under the civil action provision, "[a]ny person who suffers damage or loss by reason of a violation of [18 U.S.C. § 1030] may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g). The term "damage" is defined as "any impairment to the integrity or availability of data, a program, a system, or information" and the term "loss" is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(8), (11). The phrase "compensatory damages" is not explicitly defined in the statute.

We, however, have held that not any damage or loss is compensable. Ef Cultural Travel BV v. Explorica, Inc., 274 F.3d 577, 585 (1st Cir. 2001) ("We do not hold, however, that any loss is compensable. The CFAA provides recovery for 'damage' only if it results in a loss of at least $5,000. We agree with the court

in In re Doubleclick Inc. Privacy Litigation, 154 F. Supp. 2d 497 (S.D.N.Y. 2001), that Congress could not have intended other types of loss to support recovery unless that threshold were met. Indeed, the Senate Report explicitly states that 'if the loss to the victim meets the required monetary threshold,' the victim is entitled to relief under the CFAA. S. Rep. 104-357, at 11. We therefore conclude that expenses of at least $5,000 resulting from a party's intrusion are 'losses' for purposes of the 'damage or loss' requirement of the CFAA.").

Turner asserts that HSI violated § 1030(a)(5)(A) of the CFAA.[3] Under § 1030(a)(5)(A), a person violates the CFAA by "knowingly caus[ing] the transmission of a program, information, code, or command, and as a result of such conduct, intentionally caus[ing] damage without authorization, to a protected computer." 18 U.S.C. § 1030(a)(5)(A). Maintenance of a civil action under 18 U.S.C. § 1030(a)(5)(A) also requires one of the five factors outlined in § 1030(c)(4)(A)(i)(I)-(V): namely,

> (I) loss to 1 or more persons during any 1-year period . . . aggregating at least $ 5,000 in value;
>
> (II) the modification or impairment, or potential modification or impairment, of the

---

[3] Turner's complaint does not make clear which provision of the CFAA he is alleging that HSI violated. However, in his memorandum before the magistrate judge opposing HSI's motion for summary judgment, he argued that HSI violated 18 U.S.C. § 1030(a)(5)(A).

> medical examination, diagnosis, treatment, or care of 1 or more individuals;
>
> (III) physical injury to any person;
>
> (IV) a threat to public health or safety; [or]
>
> (V) damage affecting a computer used by or for an entity of the United States Government in furtherance of the administration of justice, national defense, or national security.

(emphasis added); see also 18 U.S.C. § 1030(c)(4)(B)(i), (g) ("A civil action for a violation of [18 U.S.C. § 1030] may be brought only if the conduct involves 1 of the factors set forth in subclauses [subclause] (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i).").

Here, the parties agree that the only possible basis for Turner's civil action is found under § 1030(c)(4)(A)(i)(I), which is limited to economic damages and requires a loss of at least $5,000.  18 U.S.C. § 1030(g) ("Damages for a violation involving only conduct described in subsection (c)(4)(A)(i)(I) are limited to economic damages.").  HSI argues that Turner fails to meet this $5,000 requirement.  Turner appears to argue that he meets the $5,000 requirement because he suffered prospective damages amounting to at least his "prospective annual income of $150,000.00."  Turner argues further that while his "damages may be limited by admissible evidence of intervening factors such as where a plaintiff mitigates his damages," HSI is barred from arguing that he failed to meet the $5,000 requirement because "HSI

had not pled that as a result of mitigation Turner could not meet the statutory threshold of $5,000.00." Unfortunately for Turner, he erroneously confuses his failure to meet a statutory requirement with the affirmative defense of mitigation.

On appeal, Turner presents no evidence that he has in fact suffered losses in the amount of $5,000. As the district court noted, the only plausible damages identified by Turner (his expenses and lost income for the hours when the system was down on June 1, 2011 and any fees he paid HSI for amounts owed for maintenance service fees) do not reach the $5,000 threshold and therefore foreclose his CFAA claims.[4] Turner attempts to bypass this fatal defect by claiming that he is entitled to damages he would have suffered if his access to the Collection Partner software had never been restored. As the district court noted, however, Turner's assertions are "counterfactual and thus absurd."

Because the CFAA contains no definition of the phrase "compensatory damages" we assume that the "plain and ordinary meaning" of the term applies. Yershov v. Gannett Satellite Info. Network, Inc., 820 F.3d 482, 487 (1st Cir. 2016). Consequently, compensatory damages are "[d]amages sufficient in amount to indemnify the injured person for the loss suffered" or "actual

_____

[4] Turner never disputed the defendant's calculation of his business expenses and presented no alternative calculation either before the district court or here on appeal that he suffered any losses other than those identified above.

- 8 -

damages." Black's Law Dictionary (10th ed. 2014). "Actual damages" is further defined as "[a]n amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses." Id. Prospective damages are "[f]uture damages that, based on the facts pleaded and proved by the plaintiff, can reasonably be expected to occur." Id.

Even if we assume that the CFAA provided for prospective damages as a form of compensatory damages, such damages would not be measured by hypothetical losses based on counterfactual assertions, but only by losses that reasonably could be expected and proven. Turner has not, and cannot, demonstrate reasonably expected damages amounting to $5,000. In fact, the record demonstrates that Turner's access to the Collection Partner software was restored after only a few hours and his access has remained uninterrupted since its restoration. Turner persists on appeal that he is entitled to all damages he would have experienced if he was never given a new license key on June 1, 2011 and his access to the Collection Partner software was never restored. Unfortunately for Turner, prospective damages do not encompass what he would have lost had the facts been different. And Turner has not demonstrated how a brief lapse in access to the Collection Partner software could reasonably be expected to result in damages totaling his yearly salary or any other imaginary damages he has dreamed up.

Lastly, Turner moved to strike HSI's motion for summary judgment and certain supporting documents, arguing that the motion was "based on two unpled affirmative defenses: mitigation and mistake" that were "outside the scope of the pleadings." The district court correctly dismissed these arguments for the same reasons discussed above -- a $5,000 threshold requirement for Turner's CFAA claim is not synonymous with an affirmative defense. Accordingly, the district court did not abuse its discretion in denying Turner's motion to strike. Any reference by HSI to Turner's failure to meet the $5,000 requirement was not barred -- Turner was required to demonstrate that he met the $5,000 damages threshold regardless of the affirmative defenses asserted by HSI.

Without a federal claim to stand on, in a last-ditch effort to restore his state law claims of conversion, intentional (or negligent) infliction of emotional distress, and unfair and deceptive business practices in violation of Massachusetts General Laws Chapter 93A, Turner argues that these state law claims satisfy the requirements for diversity jurisdiction and were thus properly before the district court. The district court found that while the parties were indisputably diverse, Turner failed to establish the necessary $75,000 amount in controversy. See 28 U.S.C. § 1332. Turner points us to no evidence that he meets the amount in controversy necessary to sustain federal jurisdiction -- therefore, the district court correctly dismissed those claims.

CE Design Ltd. v. Am. Econ. Ins. Co., 755 F.3d 39, 43 (1st Cir. 2014) ("The burden is on the federal plaintiff to establish that the minimum amount in controversy has been met." (citing Abdel-Aleem v. OPK Biotech LLC, 665 F.3d 38, 41 (1st Cir. 2012))).

## Conclusion

For the foregoing reasons, we **affirm** the district court's grant of HSI's motion for summary judgment and denial of Turner's motion to strike.