# United States Court of Appeals
## For the First Circuit

No. 17-1431

MARISOL MICHEO-ACEVEDO,

Plaintiff, Appellant

v.

STERICYCLE OF PUERTO RICO, INC.,

Defendant, Appellee,

ANGEL RIVERA-MORALES; OSVALDO SANTANA-RIVERA,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Torruella, Lynch, and Barron,
Circuit Judges.

Juan Rafael González-Muñoz, with whom Carlos M. Vergne-Vargas, Juan C. Nieves-González, and González-Muñoz Law Offices, PSC were on brief, for appellant.
Tacy F. Flint, with whom Luis D. Ortiz Abreu, Javier G. Vázquez Segarra, Goldman Antonetti & Córdova, LLC, Brian J. Gold, Natalie C. Chan, and Sidley Austin LLP were on brief, for appellant.

July 27, 2018

**BARRON**, **Circuit Judge**.    Marisol Micheo-Acevedo ("Micheo") appeals an order granting summary judgment to Stericycle of Puerto Rico ("Stericycle") and other defendants on her claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"), and dismissing without prejudice her related pendent Puerto Rico law claims.  We affirm.

**I.**

Stericycle's services include managing medical waste for hospitals.  In April 2012, Stericycle hired Micheo as a field sales representative.  A little less than a year later, in March 2013, Stericycle launched a program called "BioSystem," to which Micheo was then assigned in March 2013.  Under that program, through contracts with hospitals, Stericycle installed containers to dispose of sharp, biomedical objects like syringes.

Stericycle terminated Micheo's employment in January 2014.  Micheo brought suit against the company and two of its managers in the District Court for the District of Puerto Rico on February 3, 2015.  She alleged violations of Title VII, the Americans with Disabilities Act, 48 U.S.C. §§ 12101, et seq., the Family and Medical Leave Act, 29 U.S.C. §§ 2601-54, and six Puerto Rico laws, P.R. Laws Ann., tit. 29, §§ 146 et seq., 185(a) et seq., 194 et seq., 1321 et seq.; P.R. Laws Ann. tit. 1, §§ 501 et seq., 511 et seq.

- 2 -

On July 11, 2016, the defendants filed a motion for summary judgment as to all of Micheo's claims. Micheo then filed a motion to strike the defendants' summary judgment motion pursuant to Rule 56 of the Local Rules for the District Court of Puerto Rico ("Local Rule 56"), which requires that such motions provide citations to supporting record evidence. The District Court denied Micheo's motion.

Several months later, on November 14, 2016, Micheo filed an opposition to the defendants' motion for summary judgment. Micheo argued that summary judgment was not warranted on her Title VII claims and her related Puerto Rico law claims, but she abandoned her other federal and Puerto Rico law claims.

On March 31, 2017, the District Court issued an order that granted the defendants' motion for summary judgment as to Micheo's Title VII claims, dismissed with prejudice the federal and Puerto Rico law claims that Micheo had abandoned, and dismissed without prejudice Micheo's remaining pendent Puerto Rico law claims. This appeal then followed.

## II.

We start with Micheo's Title VII claim for gender-based disparate treatment. Because Micheo put forward no direct evidence of discrimination, the District Court applied the familiar burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), in considering the defendants' motion to

grant summary judgment as to this claim.  Under that framework, to survive summary judgment, Micheo must show that there is a genuine issue of disputed material fact with respect to, among other things, whether her employer subjected her to an adverse employment action.  See Lockridge v. The Univ. Of Maine Sys., 597 F.3d 464, 470, 472 (1st Cir. 2010).

We review the District Court's grant of summary judgment de novo.  Colón v. Tracey, 717 F.3d 43, 49 (1st Cir. 2013).  In performing that review, we must draw "all reasonable inferences . . . in favor of the non-moving party," but we are "not obliged to accept as true or to deem as a disputed material fact, each and every unsupported, subjective, conclusory, or imaginative statement made to the Court by a party."  Torrech-Hernández v. Gen. Elec. Co., 519 F.3d 41, 47 (1st Cir. 2008) (emphasis omitted).

Micheo argued that the defendants subjected her to an adverse employment action by passing her over for a promotion from her position as a field sales representative in Stericycle's BioSystem Program to the position of "Project Manager" or "Program Manager" of the Integrated Waste Stream Solutions ("IWSS"),[1] an initiative within the BioSystem Program.  She contends that the defendants gave the position instead to Jorge Rodríguez-Toro

---

[1] The parties and the District Court refer to this position variously as "Program Manager" and "Project Manager."  For simplicity, we refer to this position as "IWSS Program Manager" throughout.

- 4 -

("Rodríguez"), who was at that time also a field sales representative in the BioSystem Program.

The denial of a promotion to a position can constitute an adverse employment action. See Cartagena v. Sec'y of Navy, 618 F.2d 130, 134 (1st Cir. 1980). The District Court, however, found that, because there was no basis for finding that the position of IWSS Program Manager existed, Micheo could not show that there was a genuine issue of material fact as to whether she had been denied a promotion to it. And we agree.

In challenging the District Court's conclusion on appeal, Micheo does not argue that the fact that Rodríguez held himself out as holding the title of IWSS Program Manager -- as the record shows that he did -- suffices to create a genuine issue of material fact as to whether the position at issue existed, such that the defendants' refusal to promote her to it constituted an adverse employment action. Indeed, the record shows that Micheo also held herself out as holding a supervisory title -- namely, as "Sharps Management System Supervisor" -- and she does not contend that the title that Rodríguez held himself out as holding was in and of itself more prestigious than the one she held herself out as holding. Micheo also fails to identify any evidence that would contradict the sworn affidavit of Stericycle's Human Resources manager that, based on her own knowledge and review of Stericycle's payroll records, Stericycle at no point established such a position

on its payroll.  Micheo instead makes just two arguments to support her contention that the IWSS Program Manager position existed, which she agrees is the necessary predicate for her contention that she was treated adversely by not being promoted to it.

First, Micheo argues that a jury reasonably could find on this record that Stericycle gave Rodríguez a higher salary in return for performing the duties of IWSS Program Manager and thus that the position existed even if it was not formally designated as one on the company's payroll.  Second, Micheo argues that a jury could reasonably infer that the position of IWSS Program Manager existed from the evidence in the record that she says would permit a jury to find that, during the time period in which she was working in the BioSystem Program and Rodríguez was holding himself out as having that title, he was acting as her supervisor.

We start with what the record shows with respect to the pay that Rodríguez received while he was at the company.  Prior to the creation of the BioSystem Program, Stericycle hired Rodríguez and Micheo as field sales representatives and paid each of them the same salary, $27,000.  Then, sometime in 2013, Rodríguez was promoted to a new position within the company -- namely, transportation supervisor -- for which he received a higher salary.

There is no dispute, however, that Rodríguez received his promotion to this position -- and the salary increase that came with it -- before either Micheo or Rodríguez began working in

- 6 -

the BioSystem Program as field sales representatives.  Thus, the fact that he received a higher salary for his promotion to the position of transportation supervisor obviously provides no basis for finding that the position of IWSS Program Manager in the BioSystem Program existed.

The record does show that Rodríguez was later transferred from his position as transportation supervisor to the BioSystem Program.  And the record further shows that, following that transfer, Rodríguez held himself out as being the IWSS Program Manager even though he was formally designated as a field sales representative, like Micheo was.  But, while Micheo contends that Rodríguez continued to receive his higher salary after he had been transferred into the BioSystem Program, and during the time he was holding himself out as the IWSS Program Manager, the record does not provide a basis for so concluding.

Micheo bases her contrary assertion entirely on Rodríguez's own deposition testimony, but we do not see how it says what she contends that it does.  In that deposition, he agreed that, following his transfer to the BioSystem Program from his prior position as Transportation Supervisor, his salary was "reduced back down to the $27,000.00 in Sales."  And while Rodríguez did then offer the caveat in his testimony that "what I don't know is if, if it went back to my base salary when, when I began with," he was clear that "there was an adjustment" downwards

in his salary in consequence of his having been transferred from the position for which he had received the salary increase to his new position in sales in the BioSystem Program.  In fact, when he was asked later on in the deposition whether he was paid more to be the IWSS Program Manager, he testified that he was not.

That leaves only Micheo's contention that the position of IWSS Program Manager existed because the record would permit a jury to find that Rodríguez supervised her while she worked in the BioSystem Program.  In making that assertion, Micheo relies on copies of emails from Rodríguez to her that requested that she provide him with information about her performance of her duties.

The District Court concluded, however, that the emails showed only that "at times [Rodríguez] was told to 'verify with [Micheo] how it went in [a specific hospital]' . . . because Ms. Micheo was not performing her duties as directed and Mr. Rodríguez was told to follow up on her work[.]"  And, the District Court then determined, while such requests were "sufficient to inconvenience . . . Micheo," they were "insufficient to show that Mr. Rodríguez was Ms. Micheo's supervisor."

We agree with the District Court.  The emails at most show that Rodríguez made requests to Micheo that "inconvenienced" her.  But, as the District Court explained, evidence of such inconvenience fails to provide a reasonable basis from which a jury could find that Rodríguez had been given the kind of

- 8 -

supervisory power over Micheo that would provide sufficient support for her contention that she had been subjected to an adverse employment action.  Cf. Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998) ("A tangible employment action constitutes a significant change in employment status, . . . such as a significant change in responsibilities . . . or a decision causing a significant change in benefits.").[2]

We thus agree with the District Court that the defendants are entitled to summary judgment on her Title VII claim for gender-based disparate treatment.  And so we turn to her challenge to the District Court's grant of summary judgment to the defendants on her other Title VII claim, in which she alleges that the defendants retaliated against her for complaining of the gender-based discrimination that she claims to have endured.

**III.**

Like her evidence of gender-based disparate treatment, Micheo's evidence of retaliation is circumstantial.  Thus, the

---

[2] On appeal, Micheo also makes reference to evidence that shows that one of Rodríguez's supervisors asked him to prepare a report about Micheo's performance of those duties.  But, Micheo did not reference this report in the proceedings below.  And, in any event, the evidence concerning the report shows only that Rodríguez had been tasked on one occasion with reporting to his supervisors about Micheo's performance.  We thus do not see how that evidence provides a basis from which a jury could find that Rodríguez had supervisory authority over Micheo, such that he occupied a position in the company with significantly greater responsibilities relative to hers.  And that is so even if we consider the report in conjunction with the emails.

District Court applied the McDonnell Douglas framework in evaluating the defendants' motion for summary judgment as to this claim as well. Our review is, once again, de novo. Colón, 717 F.3d at 49.

The District Court concluded that the record provided adequate support for a jury to find that Micheo had established the following elements of her prima facie case of retaliation:

> (1) Micheo had engaged in protected conduct through her counsel's October 22, 2013 letter to Stericycle stating her intent to sue for gender discrimination and her filing of charges with the Equal Employment Opportunity Commission ("EEOC") and the Puerto Rico Anti-Discrimination Unit ("ADU") on November 8, 2013; and
>
> (2) Stericycle thereafter subjected to Micheo to adverse employment actions by suspending her on December 23, 2013; placing her on a Performance Improvement Plan ("PIP") on January 3, 2014; and terminating her employment on January 20, 2014.[3]

---

[3] Micheo also argues that she experienced two other adverse employment actions: her "exclusion" from a golf tournament and her supervisor's email to her admonishing her for "insubordination." But, Micheo was not, on her own account, excluded from the golf tournament; she was merely left off of one email planning that tournament. And while she argues that participation in the tournament was important for her professional development, she offers no argument that being left off of that one email amounted to an adverse employment action. In addition, she provides no explanation as to how her supervisor's email "materially change[d] the conditions" of her employment and thus no reason to think that this email alone qualified as an "adverse employment action." See Gu v. Bos. Police Dep't, 312 F.3d 6, 14 (1st Cir. 2002); see also Bhatti v. Tr. of Bos. Univ., 659 F.3d 64, 73 (1st Cir. 2011) ("[N]one of the reprimands here can be said to be material because none carried with it any tangible consequences."). We thus conclude that Micheo has not demonstrated a genuine issue of

- 10 -

But, the District Court then concluded that Micheo failed to show that there was a genuine issue of disputed material fact as to whether the defendants' asserted non-retaliatory reason for taking those adverse employment actions -- namely, her own misconduct at work -- was pretextual. And, on that basis, the District Court granted summary judgment to the defendants.

To challenge the District Court's ruling about pretext, Micheo relies primarily on the fact that the undisputed record shows that she was subject to adverse employment actions within three months of her protected conduct. But, this proximity in timing does not alone suffice to create a genuine issue of material fact as to pretext, given that her own unprotected conduct readily explains the timing of each of the adverse employment actions that the District Court identified. See Planadeball v. Wyndham Vacation Resorts, Inc., 793 F.3d 169, 179 (1st Cir. 2015). In particular, the record shows that Micheo was placed on the PIP soon after she was repeatedly absent from work and meetings at hospitals in which she was supposed to represent Stericycle; that Micheo was suspended soon after she initially refused to sign the PIP; and that her employment was terminated right after violating the terms of the PIP after she eventually signed it.

---

material fact as to whether either of these events qualified as an adverse employment action.

- 11 -

Micheo does assert in her brief to us that the incidents that the PIP itself identified as the basis for her placement on it were false. She fails, however, to identify anything in the record to support that assertion.

In nonetheless contending that a jury could find that Stericycle's stated reasons for taking these actions were pretextual, Micheo argues that the record permits a jury reasonably to find that the defendants deviated from the company's standard disciplinary process in disciplining her for her alleged misconduct. But, while evidence of such deviation may provide a basis for finding pretext, see Brennan v. GTE Gov't Sys. Corp., 150 F.3d 21, 29 (1st Cir. 1998), the record does not support Micheo's grounds for arguing that a jury could reasonably find that there was such deviation here.

Specifically, although Micheo argues that the company deviated from its disciplinary policy by placing her on the PIP precipitously, the District Court correctly pointed out that Stericycle's "Corrective Action Plan" states that it "reserves the right to 'skip steps'" in implementing its progressive discipline policy. In light of that fact, we do not see how Micheo has adequately explained how the company acted irregularly in implementing its disciplinary policy by placing her on the PIP when it did.

Micheo next argues that the termination of her employment while she was on the PIP violated company policy and thus constitutes evidence of pretext. But, the PIP specifically contemplated that "failure to [comply with the PIP] will force [Stericycle] to take disciplinary action up to and including termination." So, the fact that the record shows that Stericycle terminated her employment before the expiration of the PIP on the basis of her conduct while the PIP was in place does not demonstrate that Stericycle deviated from the policies set out in the PIP.

Finally, Micheo contends that Stericycle deviated from its disciplinary policy because the company did not have the supervisor of the BioSystem Program meet with Micheo to discuss the PIP; did not "provide the 'resources' for" the PIP's "successful completion"; did not seek Micheo's own version in relation to the employer's charges of misconduct; and terminated her even though she had not engaged in "gross misconduct[.]" But, Micheo points to no evidence to indicate that in taking or failing to take any of these actions Stericycle deviated from standard company practice. In particular, we note that Micheo does not point to anything in the PIP that would indicate that an employee on the PIP could only be terminated for "gross misconduct," rather than for any violation of the PIP. Indeed, the PIP specifically states that "[Micheo] must complete all items in this Action Plan,

improve and maintain an acceptable work performance according to the company's expectations by January 31, 2014.  Failure to do so will force us to take disciplinary action up to and including termination."

Micheo does also contend that the record shows that Stericycle provided "shifting explanations about the reason for her suspension" and that, on this basis, a jury could reasonably conclude that Stericycle's legitimate nondiscriminatory reason for taking the actions that it did was pretextual.  See Gómez-González v. Rural Opportunities, Inc., 626 F.3d 654, 662-63 (1st Cir. 2010) ("Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action.")  But, the statements that Micheo points to as evidence of Stericycle's inconsistent explanations for suspending her do not materially conflict with one another.

We thus conclude that the District Court correctly determined that the defendants were entitled to summary judgment as to Micheo's Title VII retaliation claim.[4]  And so we turn to Micheo's sole remaining challenge to the District Court's grant of

---

[4] Given our holding as to pretext, we need not address Micheo's contention that the District Court erred in determining that the only instances of "protected conduct" were the letter Micheo's counsel sent on October 22, 2013 to Stericycle stating her intent to sue and her November 8, 2013 complaint with the EEOC and ADU alleging sex discrimination.

summary judgment to the defendants on her Title VII claims -- namely, that the District Court abused its discretion in denying her motion to strike Stericycle's motion for summary judgment pursuant to Local Rule 56.

**IV.**

Our review of the District Court's denial of her motion to strike the defendants' motion for summary judgment pursuant to Local Rule 56 is for abuse of discretion. See Turner v. Hubbard Sys., Inc., 855 F.3d 10, 12 (1st Cir. 2017). We find none.

Local Rule 56 states that:

> Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. An assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion. The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment. The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts.

D.P.R. L. Civ. R. 56(e).

Micheo argued in her motion to strike that the defendants' motion for summary judgment failed to comply with this rule because the defendants had not properly labeled their supporting documentation. To support this contention, she

- 15 -

identified as an example of the defendants' failure to comply with the rule that they had referred in their summary judgment motion to "Exh. 53" in referring to Micheo's filings before the ADU, even though the docket entry in her case before the District Court that is numbered 81-53 "concern[ed] a completely different event: her hospitalization at Hospital Panamericano on January 18, 2014."

On appeal, Micheo repeats her argument below that the numbers assigned to the exhibits attached to the defendants' summary judgment motion did not align with the numbers for the docket entries in her case before the District Court. But, as the District Court pointed out, the defendants' "citations clearly refer to the exhibit number used to label each exhibit." We thus do not see how the District Court abused its discretion in denying Micheo's motion to strike the defendants' motion for summary judgment.

## V.

For the forgoing reasons, we **affirm** the District Court's order granting summary judgment to the defendants on Micheo's Title VII claims and dismissing without prejudice Micheo's related Puerto Rico law claims.